UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                      )
                                            )
   TIJUANA PLASCENCIA              )    Case No. 06-10881-SSM
                                            )    Chapter 13
             Debtor              )

**MEMORANDUM OPINION**

When Tijuana Plascencia (then known as Tijuana Robinson) purchased a house in 1998 constructed by the charitable organization Loudoun Habitat for Humanity ("Loudoun Habitat"), a "deed of right to repurchase" was recorded giving Habitat the right for 20 years to repurchase the property at the original sales price plus a modest annual increase for appreciation. Ms. Plascencia having now filed a chapter 13 case, the trustee, Gerald M. O'Donnell—contending that the property should be valued at fair market value and not the substantially lower amount at which Loudoun Habitat could repurchase it—has objected to confirmation on the ground that the proposed plan does not pay creditors at least as much as they would receive in a chapter 7 liquidation. For the reasons stated, the court concludes that a chapter 7 trustee would be unable to sell the property free of the obligation to offer it first to Loudoun Habitat for the stipulated price. But because—even with that limitation—the proposed plan does not pay unsecured creditors what they would receive in a chapter 7 liquidation, confirmation will be denied.

Background

The facts are not in dispute and may be simply stated. Tijuana Plascencia filed a voluntary chapter 13 petition in this court on August 2, 2006, listing $179,207.00 in

1

unsecured debts. Among the assets listed on her schedules was a single-family home (half of a duplex) located at 401 South 11th Street, Purcellville, Virginia, which she valued at $85,932.00, subject to a first deed of trust in the amount of $66,515.00. She claimed $5,000.00 of the equity in the property as exempt under the Virginia homestead exemption. Her plan proposes to pay the trustee $150.00 per month for 60 months, for total plan funding of $9,000.00. After payment of the trustee's commission, fees of debtor's counsel, and the curing of a modest mortgage arrearage, the estimated dividend on unsecured claims is 3.1 cents on the dollar.

The house at issue was sold to Ms. Plascencia on December 8, 1998, by Loudoun Habitat for $70,000. According to its Internet Web site, Loudoun Habitat is a nonprofit, ecumenical Christian housing ministry that builds houses for Loudoun County families in need using volunteer labor to keep building costs low. *See* Loudoun County Habitat for Humanity, *LHFH Facts*, http://www.loudounhabitat.org/aboutus/LHFHfacts.html (last visited Nov. 6, 2006).[1] The beneficiaries of the program are expected to pay a down

---

[1] Loudoun Habitat is an affiliate of Habitat for Humanity International, which describes its purpose and program in essentially identical terms:

> Habitat for Humanity International is a nonprofit, ecumenical Christian housing ministry . . . . Habitat has built more than 200,00 houses around the world, providing more than 1,000,000 people in more than 3,000 communities with safe, decent, affordable shelter. . . . Through volunteer labor and donations of money and materials, Habitat builds and rehabilitates simple, decent houses with the help of the homeowner (partner) families. Habitat houses are sold to partner families at no profit, financed with affordable loans. The homeowners' monthly mortgage payments are used to build still more Habitat houses. Habitat is not a giveaway program. In addition to a down payment and the monthly mortgage payments, homeowners invest hundreds of hours of their own labor – sweat equity – into building their Habitat house and the houses of others.

(continued...)

payment and a monthly mortgage payment and also to invest at least 350 hours of their own labor—"sweat equity"—into building their own house and the houses of others. *Id.* As the mortgages, which are held by Loudoun Habitat, are paid, the money goes into a fund that helps build houses for other families. *Id.*

In connection with her purchase of the property, the debtor executed a promissory note to Loudoun Habitat in the amount of $69,300.00, without interest, repayable over 20 years in monthly installments of $192.50.[2] The note is secured by a deed of trust recorded on December 17, 1998. Immediately following the deed of trust in the land records is a "Deed of Right to Repurchase" between the debtor as grantor and Loudoun Habitat as grantee. The instrument grants Loudoun Habitat a right until December 31, 2018, to repurchase the property at a specified price if the debtor, prior to that date, receives a bona fide offer to purchase the property. The repurchase option must be exercised within 30 days after the debtor gives Loudoun Habitat notice of her intent to accept the purchase offer. The price payable by Loudoun Habitat if it exercises the repurchase option is the lesser of "(a) $69,300 plus $2,079 per annum (pro rated) for each year the [debtor] has owned the property, plus one-half any major improvements made by the [debtor], less the balance due under the purchase money note; or (b) the then fair market value." If Loudoun Habitat does not timely elect to repurchase the property (or elects, but then fails to close within 30 days thereafter), the debtor may complete the sale to the third party.

---

[1](...continued)
Habitat for Humanity, *Habitat for Humanity Factsheet*, http://www.habitat.org/how/factsheet.aspx (last visited Nov. 6, 2006).

[2] The note and deed of trust were modified in 2003 to extend the maturity date to February 1, 2033.

The trustee does not contest that the option price under the deed of right to repurchase was $85,932 (the amount shown on the debtor's schedules) on the date of the bankruptcy filing. The debtor and the trustee have stipulated that the fair market value of the property, in the absence of any restriction on resale, is approximately $315,000.[3] Virginia Housing Development Authority, which apparently now holds the mortgage, has filed a proof of claim asserting a payoff of $52,275.43 and an arrearage of $292.49.

## Discussion

### I.

Chapter 13 allows a financially-strapped individual debtor to propose and obtain confirmation of a plan under which his or her debts are restructured and paid over a period not exceeding 60 months. In an ideal case, claims will be paid in full, but a compromise plan paying general unsecured claims at less than 100 cents on the dollar may be confirmed if, among other things, (1) all of the debtor's disposable income for the applicable commitment period (36 or 60 months, depending on the debtor's income) is devoted to payments under the plan and (2) creditors receive payments having a present value at least equal to what they would receive in a chapter 7 liquidation. § 1325(a)(4) and (b)(1)(B), Bankruptcy Code. The trustee concedes that the debtor is devoting her disposable income to the plan, and the sole issue is whether creditors would receive more in a chapter 7 liquidation. The answer to that question in turn depends on whether a chapter 7 trustee would be bound by the deed of repurchase to sell the property back to Habitat for $85,932 or instead could sell the property to a third party for its fair market value of $315,000.

---

[3] The court notes, however, that the 2006 tax assessment for the property is only $72,000. Since prior year assessments were as high as $237,200, the court assumes that the debtor was able to obtain relief on her assessment based on the resale restriction.

II.

Neither the debtor nor the trustee have cited the court to any similar case, and the issue appears to be one of first impression. Some general principles, however, are clear. Property of the bankruptcy estate includes all legal or equitable interests of the debtor in property as of the filing date. § 541(a), Bankruptcy Code. Property rights are determined in the first instance by state law. *Butner v. United States*, 440 U.S. 48, 99 S. Ct. 914, 59 L. Ed. 2d 13 (1979). As a general proposition, the trustee takes only such rights as the debtor had in the property under state law. The trustee does, however, have special powers that operate to augment the bankruptcy estate by reversing certain transfers and stripping off certain interests. Among these powers are the trustee's "strong arm" powers in § 544, Bankruptcy Code, as well as the trustee's powers to avoid preferences, fraudulent transfers, and certain statutory liens. §§ 547(b), 548(a) and (b), and § 545, Bankruptcy Code. Additionally, the trustee may reject executory contracts to which the debtor is a party, effectively converting any claim for specific performance to a monetary claim for breach of contract. § 365(a), Bankruptcy Code; *Leasing Servs. Corp. v. First Tennessee Bank Nat'l Ass'n*, 826 F.2d 434, 436 (6th Cir. 1987) ("Rejection denies the right of the contracting creditor to require the bankrupt estate to specifically perform the then executory portions of the contract . . . [and] . . . limits the creditor's claim to damages for breach of contract."). Finally, under certain conditions a trustee may sell property of the bankruptcy estate free and clear of third-party interests. § 363(f), Bankruptcy Code.

The trustee does not argue that the debtor herself could sell the property without first offering it to Loudoun Habitat for the price specified in the deed of repurchase. Nor has the trustee identified any particular provision of the Bankruptcy Code that would allow a

5

chapter 7 trustee to sell the property for fair market value without first offering it to Loudoun Habitat at the stipulated price. The court has nevertheless independently reviewed the applicable law to determine whether any of the special powers given to trustees by the Bankruptcy Code would allow a sale free of the limitation imposed by the deed of repurchase. Because none of those powers has apparent applicability to the facts of this case, the court concludes that a chapter 7 trustee would be bound by the deed of right to repurchase.

A.

The court will first address the trustee's "strong arm" powers as set forth in § 544, Bankruptcy Code. Essentially, the trustee has the rights and powers that could be exercised under state law by a creditor with a judgment lien or an unsatisfied execution and, as to real estate, by a bona fide purchaser from the debtor on the filing date. § 544(a)(1)-(3), Bankruptcy Code. Thus, a trustee would not be bound by, and could avoid, an option contract to purchase real estate if such contract were subordinate under state law to the interests of a judgment lien creditor, a creditor with an unsatisfied execution, or a bona fide purchaser.

The problem here, however, is that Virginia law specifically protects option purchasers whose options are recorded among the land records:

> Any option to purchase real estate, and any memorandum, renewal or extension thereof, shall be void as to (i) all purchasers for valuable consideration without notice not parties thereto and (ii) lien creditors, until such instrument is recorded in the county or city where the property embraced in the option, memorandum, renewal or extension is located.

Va. Code Ann. § 55-57.2(A) (2006). Accordingly, since the deed of right to repurchase was recorded, the purchase option has priority over the rights of a judgment lien creditor or

purchaser for value without notice. Because the trustee's strong-arm rights and powers are no greater than such a creditor or purchaser, the trustee would not be able to avoid the right under § 544.

### B.

The court next considers whether the trustee would be able to reject the right to repurchase as an executory contract. The Bankruptcy Code allows a trustee, with court approval, to assume or reject any executory contract to which the debtor is a party. § 365(a), Bankruptcy Code. Rejection, to be sure, constitutes a breach of the contract, and gives rise to a claim for damages; however, the claim is treated as a pre-petition claim and may be compromised or discharged in the case. § 365(g), Bankruptcy Code.

The term "executory contract" is not defined in the Bankruptcy Code, but most courts, including the Fourth Circuit, have adopted the definition first articulated by Professor Vern Countryman in a celebrated law review article:

> [A] contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.

Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L. Rev. 439, 460 (1973); *Gloria Mfg. Corp. v. Int'l Ladies' Garment Workers' Union,* 734 F.2d 1020 (4th Cir. 1984) (adopting the Countryman test); *see also NLRB v. Bildisco and Bildisco,* 465 U.S. 513, 522–23 n.6, 104 S. Ct. 1188, 1194 n.6, 79 L. Ed. 2d 482 (1984) (explaining that Congress intended the term to apply to contracts "'on which performance remains due to some extent on both sides.'") (internal citation omitted). Although there is some disagreement among the courts that have considered the issue, see, *e.g., In re Waldron*, 36 B.R. 633 (Bankr. S.D. Fla. 1984), most courts, including the District Court for this district, have concluded that an

7

unexercised option is not an executory contract. *BNY Capital Funding LLC v. US Airways, Inc.*, 345 B.R. 549 (E.D. Va. 2006).

The mere fact that an unexercised option is not executory, however, does not wholly answer the question of whether the trustee is bound by it. One way to view an executory contract is that it is an asset (the debtor's right to require performance from the other party) coupled with a liability (the debtor's obligation to perform). If the benefit of performing the contract exceeds the cost to the estate, the trustee can claim the benefit for the estate by performing the debtor's obligations. On the other hand, if the cost of performance would exceed the benefit to be received, the trustee can simply relinquish the benefit and refuse to perform. An unexercised option, by contrast, is either an asset or a liability, depending on which party it binds. When the option runs in favor of the debtor, the option is an asset. *Id.* at 556. By the same token, when the option runs in favor of a non-debtor party, it is simply a contingent liability and may be dealt with as any other claim.

The question before the court, however, is whether under Virginia law a recorded option is merely a contract right or whether it rises to the level of a property interest. At oral argument, the trustee took the position that the deed of right to repurchase did not create a traditionally-recognized property interest. Although in Virginia it has been held that an option to purchase real estate, standing by itself, creates no present interest in real estate, but only the right to acquire such an interest in the future, *Ryland Group, Inc. v. Wills*, 229 Va. 459, 463-64, 331 S.E.2d 399, 402 (1985), at least one lower Virginia court has stated that the enactment of §§ 55-57.1 and 55-57.2, Code of Virginia, has changed the traditional rule, so that an option is in the "nature of an interest in real estate which may be recorded and by that recordation protect the optionee's interest in the real estate." *Springfield Eng'g Corp. v. Three*

8

*Score Dev. Corp.*, 26 Va. Cir. 186, 191 (1992).  This court concurs.  Accordingly, Loudoun Habitat's right to repurchase—constituting as it does an interest in the property—cannot be treated simply as a contingent claim that is subject to discharge or compromise in the case.

C.

The court next considers whether the trustee could sell the property free and clear of the option.  Under certain conditions, a bankruptcy trustee may sell property of the estate free and clear of third-party interests.  § 363(f), Bankruptcy Code.  Any such sale, however, must provide adequate protection of such interest.  § 363(e), Bankruptcy Code.  This is usually, although not always, accomplished by transferring the interest to the proceeds of sale.  A sale may be decreed free and clear of particular interests, however, only if at least one of the following conditions is met:

(1)  applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such property is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

§ 363(f)(1)-(5), Bankruptcy Code.  The trustee has not cited to any Virginia statute or case authority—and the court is aware of none— that would permit sale of the property free and clear of the right to repurchase or that would require Loudoun Habitat to accept a money satisfaction of its interest.  The interest is not a lien and, so far as appears, is not in bona fide dispute.  Thus, a sale free and clear of Loudoun Habitat's interest could be decreed only if Loudoun Habitat consented.  Since there is no evidence that it would do so, the court

concludes that a chapter 7 trustee could not sell the property free and clear of the right to repurchase.

D.

The court addresses, finally, the trustee's power to set aside preferential or fraudulent transfers. §§ 547(b) and 548(a), Bankruptcy Code. A preferential transfer, briefly stated, is a payment or other transfer made within 90 days before the bankruptcy filing (one year if the transferee is an insider) on account of an antecedent debt that enables the creditor to receive more than the creditor would have received in a chapter 7 liquidation had the transfer not been made. § 547(b), Bankruptcy Code. A fraudulent transfer is one that is made within two years[4] before the bankruptcy filing with actual intent to hinder, delay, or defraud creditors, or, regardless of intent, was made for less than reasonably equivalent value at a time when the debtor was insolvent or became insolvent as a result of the transfer. § 548(a), Bankruptcy Code. The transfer at issue became effective as to third parties when the deed of right to repurchase was recorded on December 12, 1998, more than seven years before the bankruptcy petition was filed. Accordingly, even putting aside the fact that the transfer does not appear on its face to satisfy any of the other requirements for a preference or fraudulent transfer, the trustee could not avoid it under §§ 547 or 548 of the Bankruptcy Code.

A trustee, to be sure, is not necessarily limited to the relief provided by those sections, but may also avoid any transfer that could be avoided under state law by a creditor holding an allowed unsecured claim. § 544(b), Bankruptcy Code. Virginia law, in turn, allows transfers made with actual intent to hinder, delay, or defraud creditors, as well as

---

[4] The period was formerly one year but has been increased to two years for cases filed on or after April 20, 2006. Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, §§ 1402(1) and 1406(b)(2), 119 Stat. 23 (2005).

10

voluntary transfers not made on valuable consideration (or made on consideration of marriage) by an insolvent transferor to be set aside at the instance of unpaid creditors. §§ 55-80 (fraudulent transfers) and 55-81 (voluntary transfers), Code of Virginia. The statute of limitations for an action under § 55-81, however, is five years. § 8.01-253, Code of Virginia. Since the deed of right to repurchase was recorded more than seven years before the bankruptcy filing, it could not be set aside as a voluntary conveyance under Virginia law even assuming that a chapter 7 trustee could show that the debtor did not receive "consideration deemed valuable in law."[5] Although transfers made with actual intent to hinder, delay, or defraud creditors are not subject to a specific statute of limitations under Virginia law, *In re Massey*, 225 B.R. 887, 890 (Bankr. E.D. Va. 1998), there is nothing in the record remotely suggesting that the deed of right to repurchase was part of a scheme to defraud creditors. Thus, there appears to be no basis upon which a chapter 7 trustee could avail himself of Virginia law to set aside the right of repurchase.

### III.

Although, for the reasons stated, the court is unable to agree that a chapter 7 trustee would be able to sell the property for its current market value of $315,000 without first offering it to Loudoun Habitat for $85,932, the issue remains whether the plan pays unsecured creditors at least as much (in present value) as they would receive in a chapter 7 liquidation. Because the filed proof of claim by the mortgage holder reflects more equity in

---

[5] Although the record is not developed on this issue, the court assumes that the right to repurchase was part of the bargained-for consideration for the below-market sale to the debtor, and that its purpose was to protect the integrity of the housing program by preventing recipients from simply turning around and making a quick profit on houses built with volunteer labor and donated materials.

the property than shown on the schedules, the court concludes that creditors are receiving less under the plan than they would receive in a chapter 7 liquidation.

The gross amount unsecured creditors will receive under the plan may be shown as follows:

| | |
|---|---:|
| Plan Payments | $9,000.00 |
| Trustee's commission | ($900.00) |
| Fees of debtor's attorney | ($2,123.00) |
| Mortgage arrears | ($292.44) |
| Available for unsecured | $5,684.56 |

The filed unsecured claims total $156,818.67, resulting in a gross dividend on unsecured claims of approximately 3.6 cents on the dollar. However, application of the liquidation test requires that creditors receive payments having a <u>present value</u> at least equal to what they would receive in a chapter 7 case. § 1325(a)(4), Bankruptcy Code. The concept of "present value" is simply a recognition that a dollar received today is worth more than a dollar to be received a day, a month, or a year hence. *In re Birdneck Apt. Assocs. II, L.P.*, 156 B.R. 499, 507 (Bankr. E.D. Va. 1993). In particular, a future dollar is worth less than a dollar received today by "the rate of interest which the dollar would earn if invested at an appropriate interest rate." *Id.* Mathematical formulae exist to calculate the present value of a stream of future payments using an assumed interest rate, called the discount rate.[6] The choice of a proper discount rate is not always obvious, since it represents the rate of return that might have been earned had the funds been available for immediate investment. However, because the Code of Virginia uses an 8% rate for the purpose of commuting life estates to present

---

[6] A clear and engaging tutorial on present value and how it is computed can be found at Samuel L. Baker, *Discounting Future Income and Present Value*, http://hadm.sph.sc.edu/Courses/Econ/dis/Dis.html (last visited November 6, 2006). Most modern business or financial calculators have built-in functions to perform present value calculations.

value, § 55-269.1–271, Code of Virginia, the court will apply that rate in this context as well. The present value of $5,684.56 paid in equal installments over 60 months at a discount rate of 8% is $4,672.56. The question, therefore, is whether unsecured creditors would receive more than this in a chapter 7 liquidation.

The court concludes that they would. In a chapter 7 liquidation, the trustee, even if limited to selling the property back to Loudoun Habitat, would realize $33,657 (that is, $85,932 minus the mortgage payoff of $52,275) before costs of sale. Because a realtor would not be involved, the costs of sale (which would consist primarily of the Virginia grantor tax, the cost of preparing the deed, and the cost of releasing the mortgage) would be minimal, perhaps two percent at the most. The debtor would be entitled to $5,000 of the proceeds under the Virginia homestead exemption, and the trustee would be entitled to compensation under § 326(a), Bankruptcy Code. The funds available to pay unsecured claims would therefore be as follows:

| | |
|---|---:|
| Sales price of house | $85,932 |
| Mortgage payoff | ($52,275) |
| Costs of sale (assumed at 2%) | ($1,719) |
| Net Proceeds | $31,938 |
| Trustee's commission | ($7,297) |
| Homestead exemption | ($5,000) |
| Available for unsecured creditors | $19,641 |

Since this greatly exceeds the present value of $4,672 that unsecured creditors would receive under the proposed plan, the plan fails the liquidation test and cannot be confirmed.

A separate order will be entered denying confirmation, with leave to file a modified plan.

Date: _____     _____

Alexandria, Virginia

Stephen S. Mitchell
United States Bankruptcy Judge

Copies to:

Tijuana Plascencia
401 South 11th Street
Purcellville, VA   20132
Debtor

Robert R. Weed, Esquire
Law Offices Of Robert Weed
7900 Sudley Road, Suite 409
Manassas, VA   20109
Counsel for the debtor

Gerald M. O'Donnell, Esquire
211 North Union St., Suite 240
Alexandria, VA   22314
Chapter 13 trustee